Ivory v. Greer Brothers, Inc.

---

SHIRLEY IVORY, WIDOW, MARY McADOO IVORY FARROW, GUARDIAN AD LITEM FOR SULISA IVORY AND TONY IVORY, AND SALLY IVORY, GUARDIAN AD LITEM FOR MAURICE IVORY, PLAINTIFFS v. GREER BROTHERS, INC., EMPLOYER, AMERICAN MUTUAL LIABILITY INSURANCE CO., CARRIER DEFENDANTS

No. 7910IC705

(Filed 4 March 1980)

**Master and Servant § 79.2— workers' compensation death benefits— invalidity of purported second marriage**

There was sufficient evidence to overcome the presumption of the validity of the deceased employee's purported second marriage, and the Industrial Commission properly found that the deceased employee was still married to his first wife at the time of his purported second marriage and that his second

wife was not his "widow" and entitled to share in workers' compensation death benefits with minor children born to deceased employee during his first marriage, where there was evidence that the employee and his first wife were married in 1962 and lived together until 1968; his first wife lived at the same address after she and the employee separated, but she did not hear anything from the employee until he came back to visit in 1968; the first wife was never served with any legal process regarding a divorce action instituted by the employee; the first wife obtained an absolute divorce from the employee some ten months after the employee purported to marry his second wife; when the employee obtained a license for the second marriage, he told the clerk that he was single and had never been married before; and the employee never told the second wife that he had been married before and never told the first wife he had remarried.

APPEAL by plaintiff Shirley Ivory from the Opinion and Award of the Industrial Commission filed 22 May 1979. Heard in the Court of Appeals on 7 February 1980.

This is a Worker's Compensation proceeding brought by the alleged widow and children of James Ivory to determine which parties are entitled to benefits payable as a result of his death. His employer, Greer Brothers, Inc., and its insurance carrier, American Mutual Liability Insurance Company, stipulated that Ivory was killed in an accident arising out of and in the course of his employment and that his death was compensable. Thus, the only question raised by the proceeding was whether Shirley Ivory, claiming as the widow of the deceased, was entitled to share in the benefits with the minor children born to deceased during a previous marriage.

The matter was heard before Industrial Commission Chairman William H. Stephenson on 11 September 1978, and evidence tending to show the following was presented:

Shirley Ivory was married to James Ivory on 31 January 1972 in Hastings County, Richmond, Virginia. She testified that, before they were married, James told her he had never been married before; that, when they applied for their marriage license, he told the clerk that he was single and that this was his first marriage; and that she did not find out about his previous marriage until his funeral. She lived with James "continuously" until about 10 or 11 months before his death when he came to North Carolina to look for work, but he "visited" her in Richmond about three days before his death. Furthermore, Shirley had visited him once

Ivory v. Greer Brothers, Inc.

at his mother's home in Warren County, North Carolina. She testified that he had introduced her to his mother as his "wife."

James's mother, Sally Ivory, testified that her son was living with her at the time of his death; that he was first married to Mary McAdoo with whom he had three children and that James's son Maurice, for whom she was appointed guardian ad litem, had lived with her since he was one month old. Sally said that she knew Shirley and knew "that James married her in January of 1972."

James's first wife, Mary, testified that she and James were married in March of 1962 and separated in 1968. Since that time she has lived with their children at 1301 Willowdale in Durham, North Carolina. After they separated, she did not see or hear from James until 1976 when he suddenly showed up for a visit. She said he came back several times after that, but "never mentioned the fact that he was married." She did not find out about Shirley until after James died.

Mary testified further that she had filed for and obtained a divorce from James on 11 December 1972 on the grounds of one year's separation. She said she had been unsuccessful in locating his residence at the time, and that she "never received any lawsuit, summons or complaint which related to any divorce instituted by James." Mary remarried in 1973. She did not claim benefits for herself, but claimed as guardian ad litem for the two minor children, Tony and Sulisa Ivory.

Exhibits admitted into evidence for the minor children included the marriage license of Mary and James and the judgment of divorce obtained by Mary from James. Shirley also introduced a marriage license granted to her and James.

Chairman Stephenson filed his Opinion and Award on 27 December 1978 wherein he made findings of fact and concluded that the three minor children were entitled to all benefits due because the marriage between James and Shirley was a nullity since James was still married to Mary at the time.

Shirley appealed to the full Commission which, on 22 May 1979, affirmed and adopted as its own the Opinion and Award of Chairman Stephenson, and she then appealed to this Court.

*Loflin, Loflin, Galloway & Acker, by Ann F. Loflin, for plaintiff appellee Mary McAdoo Ivory Farrow.*

*Blanchard, Tucker, Twiggs & Denson, by Charles F. Blanchard, for plaintiff appellant Shirley Ivory.*

*No counsel for defendants.*

HEDRICK, Judge.

The findings of fact of the Industrial Commission, when supported by competent evidence, are conclusive on appeal. G.S. § 97-86; *Inscoe v. DeRose Industries, Inc.,* 292 N.C. 210, 232 S.E. 2d 449 (1977) [Citations omitted.]; *Gaines v. L. D. Swain & Son, Inc.,* 33 N.C. App. 575, 235 S.E. 2d 856 (1977). The question before this Court in this case is whether competent evidence was adduced at the hearing before Chairman Stephenson to support the following challenged findings of fact:

FINDINGS OF FACT

. . .

2. James and Mary lived together continuously as man and wife from the date of their marriage until they separated in 1968. Mary thereafter continued to reside in the home which they occupied at 1301 Willowdale Drive, Durham, North Carolina, to the date of the hearing in this case. Mary had absolutely no contact with James from the date of their separation until sometime during the year 1976 when James showed up at the Willowdale Drive address and talked to Mary. No legal documents of any type were ever served on Mary concerning any divorce, although James knew at all times where Mary was living. When James returned to Mary's home in 1976 he did not tell Mary he had remarried but Mary informed him when he tendered a present to her that she could not accept it for the reason that she had remarried.

3. On December 11, 1972 Mary obtained an absolute divorce in the General Court of Justice, District Court Division of Durham County. This was the only divorce ever obtained by Mary or James.

4. On January 31, 1972 James and Shirley Elizabeth Neblett (hereinafter "Shirley") obtained a marriage license in Richmond, Virginia. On the application for license James stated that he was single and this was his first marriage, when in truth and in fact it was his second "marriage" and he was at that time still legally wed to Mary. James and Shirley went through a "marriage" ceremony in Hastings, Virginia on January 31, 1972. James told Shirley he had never been married before but had one illegitimate son. Shirley thereafter lived with him continuously until about ten months prior to his death. James was then having difficulty obtaining work in the Richmond area so he went to temporarily stay with his mother, Sally V. Ivory, in North Carolina, but when he could do so would return to his home with Shirley in Virginia. In fact, he spent three nights with Shirley during the latter part of November of 1977.

5. When James and Shirley went through a marriage ceremony in Virginia on January 31, 1972 James was still legally married to Mary. At that time he could not legally enter into a marriage contract with anyone else and said "marriage" was therefore void ab initio. For this reason, Shirley was not the "widow" of James.

6. At the time of his death James left surviving as his sole whole dependents his three minor children, Maurice Ivory, Sulisa Ivory, and Tony A. Ivory who are entitled to all compensation due by reason of the death.

From these facts the Commission concluded that the "marriage" between James and Shirley was a nullity and thus the three minor children were entitled to all benefits due by reason of James's death. The appellant asserts that the evidence was not sufficient to support the findings upon which these conclusions were based for the reason that the evidence was not sufficient to overcome the presumption in law that the second marriage is the valid one. That presumption has been well-stated as follows:

"A second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it. In such case the presumption of innocence and morality prevail over the presumption of the continuance of the first or former marriage."

*Kearney v. Thomas*, 225 N.C. 156, 164, 33 S.E. 2d 871, 877 (1945) [citations omitted]. While it is true that the presumption exists, our Supreme Court has held that the issue of the validity of the second or subsequent marriage is properly submitted to the finder of facts which, in a case like the one before us, must decide whether the party contesting the marriage's validity has produced sufficient evidence to overcome the presumption. *Id.; see also Chalmers v. Womack*, 269 N.C. 433, 152 S.E. 2d 505 (1967).

In the case at bar, the fact-finder has determined that Mary, the party with the burden of proof, did offer enough evidence to rebut the presumption that James's marriage to Shirley was valid. We agree. The findings of fact on the issue are amply supported by competent evidence in the record, namely: Mary and James were married in 1962 and lived together thereafter until 1968; Mary live at the same address after she and James separated, but she did not hear anything from him until he came back to visit in 1976; Mary was never served with any legal process regarding a divorce action instituted by James; Mary obtained an absolute divorce from James on 11 December 1972, some ten months after James purported to marry Shirley; when James applied for a license to marry Shirley, he told the clerk that he was single and had never been married before; James never told Shirley that he had been married before; James never told Mary that he had remarried.

From this evidence the Commission found that James was still married to Mary when he went through the marriage ceremony with Shirley and therefore concluded that the subsequent "marriage" was void ab initio. We think the Commission properly so found and concluded.

Appellant relies on *Denson v. C. R. Fish Grading Co., Inc.*, 28 N.C. App. 129, 220 S.E. 2d 217 (1975), for the proposition that "[t]he mere proof that one party had not obtained a divorce [e.g., by a showing of no notice or service of divorce proceedings] is not sufficient to overcome the presumption, since the other party might have obtained a divorce." *Id.* at 131, 220 S.E. 2d at 219. That is a correct statement of the law which obtains in this State, but *Denson* also held that the question of whether a first wife of a deceased employee had overcome the presumption of the validity of a subsequent marriage was a question of fact for the Commis-

sion. In that case, the Commission found as a fact that the first wife had not overcome the presumption. Its finding was supported by the record which established *only* that the first wife had never been served with any notice of a divorce obtained by her husband.

Conversely, in the case at hand, the Commission has found as a fact that the first wife has overcome the presumption. Its finding is supported by competent evidence of record, including evidence in addition to the lack of notice to Mary that James had ever instituted divorce proceedings. Its finding will thus not be disturbed on appeal. Accordingly, the Opinion and Award appealed from, dated 22 May 1979, is affirmed.

Affirmed.

Judges VAUGHN and CLARK concur.